JOSEPH E. BUCKLEY, JR., PLAINTIFF-APPELLANT AND
CROSS-RESPONDENT, v. TRENTON SAVING FUND
SOCIETY, DEFENDANT-RESPONDENT AND CROSS-APPELLANT.

Argued January 4, 1988—Decided August 11, 1988.

356

*Joseph E. Buckley, Jr.,* argued the cause for appellant and cross-respondent, *pro se.*

*Michael J. Nizolek* argued the cause for respondent and cross-appellant (*Backes, Waldron & Hill,* attorneys).

*Hugo M. Pfaltz, Jr.,* argued the cause for *amicus curiae* New Jersey Council of Savings Institutions (*Pfaltz & Woller,* attorneys; *Alice Mildred Milmed,* on the brief).

*Dennis R. Casale* argued the cause for *amicus curiae* New Jersey Bankers Association (*Jamieson, Moore, Peskin & Spicer,* attorneys; *Dennis R. Casale, Kevin L. Lilly,* and *Michael J. Mann,* on the brief).

The opinion of the Court was delivered by

POLLOCK, J.

The fundamental question in this case is whether a customer may recover against a drawee bank for mental anguish and punitive damages caused by the bank's wrongful dishonor of the customer's check drawn payable to a third party. The Law

Division dismissed the claim of plaintiff, Joseph E. Buckley, Jr., for punitive damages, but submitted his claim for mental anguish to the jury, which returned a verdict for $25,000 in favor of Buckley and against Trenton Saving Fund Society (the bank). The Appellate Division affirmed the dismissal of the punitive damages claim, and reversed and remanded the claim for mental anguish. 216 *N.J.Super.* 705 (1987). We granted plaintiff's petition for certification, 108 *N.J.* 211 (1987), and defendant's cross-petition, *id.* at 212. We now find that plaintiff may not recover for either punitive damages or his alleged mental anguish. Accordingly, we modify the judgment of the Appellate Division and remand the matter to the Law Division for the entry of a judgment dismissing the complaint.

–I–

Consistent with an air of informality that pervaded the trial, plaintiff, an attorney, represented himself and was his sole witness. His testimony was a narration of his version of the facts, which included hearsay statements and purported admissions by the bank, as well as legal argument. Similarly, the bank's case consisted of the testimony of two officers, neither of whom was directly involved in the events that gave rise to the suit. Neither party introduced the signature cards or any other written evidence of the contract pertaining to the checking account. Many of the relevant facts, however, are undisputed.

In 1975 plaintiff, then on the verge of taking the bar examination, opened a checking account in his name with the bank. At about the same time, he obtained a mortgage for the purchase of a home in Trenton as tenants by the entirety with his wife, Linda. He requested that in the event of an overdraft the bank not return his checks unpaid, but advise him that there were insufficient funds in the account.

From 1979 through 1982, over thirty checks drawn on his account were returned to plaintiff for insufficient funds, and on

various occasions he was delinquent in his mortgage payments. Some of the overdrafts were attributable to checks drawn by his wife, who signed plaintiff's name as the drawer. In 1981 plaintiff separated from his wife. As part of their separation agreement, plaintiff agreed to pay his wife $150 per week to support her and their four children.

On January 14, 1984, Mrs. Buckley tried to cash one of plaintiff's $150 support checks at the bank's Robbinsville branch, where neither she nor he maintained an account. According to the bank, Mrs. Buckley was unknown at that branch, and it refused to cash the check because she did not maintain an account there and could not otherwise identify herself. The reason for the requirement that the presenter maintain an account at the branch of presentment was to enable the bank to verify the presenter's signature from bank records.

In its answer, the bank admitted the allegation in the complaint that "[w]hen the check was presented, defendant's manager personally recognized Mrs. Buckley as she had at previous times paid similar checks." At trial, however, a bank officer explained that it was at the Ewing branch, not the Robbinsville branch, where Mrs. Buckley was known. The officer related that when told she could not cash the check at the Robbinsville branch, Mrs. Buckley replied, "[n]o problem, I'll go to the Ewing branch and cash it tomorrow." Unfortunately, neither Mrs. Buckley nor anyone from the Robbinsville branch testified at trial, so the record does not contain the testimony of the participants in the transaction.

According to plaintiff, his parents called him about the dishonor of the check, and he called Mrs. Watson, the manager of the Ewing branch. Mrs. Watson agreed that in the future Mrs. Buckley could cash checks at both the Ewing and Robbinsville branches. Two months later, however, on March 9, the bank, apparently the Robbinsville branch, again refused to cash one of the support checks for Mrs. Buckley, and she later cashed it at the Ewing branch.

Plaintiff testified further that after both events, his wife, with whom he was engaged "in earnest divorce negotiations," berated him. Also, his parents, sister, best friend, and children spoke to him about the event. After the March transaction, his friends and relatives did not accept his explanation that the refusal to cash the check was due to the bank's error. Although plaintiff testified that his mother, father, and best friend continued to refuse to talk to him, he did not call any of these potential witnesses at trial. In addition, he did not offer any medical testimony to support his claim for mental anguish or emotional distress. He neither asserted nor proved a claim for monetary loss.

Plaintiff's reaction to his ex-wife's difficulties in cashing checks was to sue the bank for intentional and negligent infliction of emotional distress arising out of the dishonor of the checks, fraud, invasion of privacy, and punitive damages. The trial court dismissed his claims for fraud and invasion of privacy, and plaintiff has not pursued those claims on appeal. Further, plaintiff stipulated to the dismissal of his claim for the negligent infliction of emotional distress. The court denied the bank's motion to dismiss the plaintiff's claim for intentional infliction of emotional distress and charged the jury:

[W]hen a bank dishonors a check of its customer and wrongfully refuses to pay it when presented for payment, that bank is liable to its customer for damages proximately caused by the wrongful dishonor of an item. Whether any consequential damages are proximately caused by the wrongful dishonor is a question of fact to be determined in each case.

\* \* \* \* \* \* \* \*

Now, one aspect of damages that is before you under the facts of this case has to do with emotional distress that has been testified to by plaintiff, Mr. Buckley. And I instruct you that in this case there can be, if you're satisfied by the proof, and you find that there was a dishonor of the checks by the—on the part of the defendant, I charge you that as one element of damages, and that you can reach one for intentional infliction of emotional distress.

Now, what is meant by that in the law is that one who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress. Now, liability may exist where the conduct exceeded all bounds usually tolerated by decent society,

and where the actions are especially calculated to cause and do cause mental distress of a very serious kind.

So, in this case, if you find that there was a wrongful dishonor of the plaintiff's check, and you find that the plaintiff is entitled to recover damages, you may consider as an element of damage, such intentional infliction of emotional distress as would be—correspond to that definition I've given you.

No specific interrogatories were submitted to the jury, which returned a general verdict awarding plaintiff $25,000 in damages. The trial court denied the bank's motion for judgment notwithstanding the verdict.

In reversing and remanding, the Appellate Division ruled that the trial court failed "to delineate the distinction between mistake and an intentional breach or willful, wanton or reckless misconduct." 216 *N.J.Super.* at 715. The court also criticized the trial court's charge on proximate cause, noting that although the jury may have concluded that the bank intentionally dishonored plaintiff's checks, the dishonor may not have proximately caused plaintiff's emotional distress. *Ibid.* Consequently, the Appellate Division remanded the matter to the Law Division for a new trial. In reaching that result, however, the Appellate Division affirmed the trial court's ruling that plaintiff could not recover punitive damages. *Id.* at 715–16.

–II–

The resolution of this appeal requires us to consider the nature of a cause of action for wrongful dishonor of a check and the requirements for recovering for emotional distress for such a dishonor. At the center of the analysis is section 4–402 of the Uniform Commercial Code, pertaining to a bank's liability to a customer for wrongful dishonor. *N.J.S.A.* 12A:4–402 (section 402). We begin with the nature of the cause of action.

An action for wrongful dishonor sounds in both tort and contract. Some describe it as a tort action, R. Anderson, *Anderson on the Uniform Commercial Code* § 4–402.3 at 150 (3d ed. 1982) (Anderson), but others view it as sounding in contract, *N.J.S.A.* 12A:4–402, New Jersey Study Comment.

Still others say the characterization as tort or contract does not make any difference. J. White & R. Summers, *Handbook of the Law Under the Uniform Commercial Code* § 17–4 at 675 (2d ed. 1980) (White & Summers). When drafting the Uniform Commercial Code (the Code), the commissioners on uniform state laws did not resolve the issue. *U.C.C.* § 4–402, comment 2 (1977). To the extent the cause arises out of the contractual arrangement between the bank and its customer, it sounds in contract, but to the extent it arises from the status of the parties and their relationship to each other apart from contract, the cause may more appropriately be characterized as a tort action. We conclude that the wrongful dishonor is a hybrid cause of action, and that characterizing it as tort or contract is not as important as identifying the elements of the cause of action and the recoverable damages.

Consequently, our analysis turns to *N.J.S.A.* 12A:4–402, which provides:

> A payor bank is liable to its customer for damages proximately caused by the wrongful dishonor of an item. When the dishonor occurs through mistake liability is limited to actual damages proved. If so proximately caused and proved damages may include damages for an arrest or prosecution of the customer or other consequential damages. Whether any consequential damages are proximately caused by the wrongful dishonor is a question of fact to be determined in each case.

The failure of section 402 to specify recoverable damages has perplexed both courts and scholars. At common law, customers who were not business people or "traders" were obliged to prove damages. *N.J.S.A.* 12A:4–402, New Jersey Study Comment. Under the "trader rule," damages for defamation to a merchant were presumed from a wrongful dishonor. *Id.;* White & Summers, *supra,* § 17–4 at 670. In this state, by legislative enactment before the adoption of the Code, business people, like everyone else, were obliged to prove damages. *N.J.S.A.* 17:9A–228, repealed by *L.* 1961, *c.* 120, eff. Jan. 1, 1963; New Jersey Study Comment.

Section 402 modified the rules on damages by distinguishing dishonors that occur through mistake from those that occur

through the bank's intentional conduct. As the second sentence in section 402 states, "[w]hen the dishonor occurs through mistake liability is limited to actual damages proved." To the extent that a wrongful dishonor results from a bank mistake, every customer, including a "trader," must prove actual damages. *N.J.S.A.* 12A:4-402, *U.C.C.* comment 3.

The absence from section 402 of a damages provision concerning an intentional or willful dishonor has led two leading authorities to conclude that the presumption of damages associated with the "trader rule" "still applies when the wrongful dishonor results not from mistake or inadvertence but from the willful action of the bank * * *. The negative implication is that when wrongful dishonors occur not 'through mistake' but willfully, the court may impose damages greater than 'actual damages.' " White & Summers, *supra*, § 17-4 at 670-71; Hawkland, Leary, & Alderman, *U.C.C. Series* § 4-402:06 (art. 4).

Section 402 itself provides limited guidance for determining whether mental anguish should be recoverable from the wrongful dishonor of a check. In the first sentence, section 402 states that a "payor bank is liable to its customer for damages proximately caused by the wrongful dishonor of an item." The second sentence limits recovery for "a dishonor that occurs through mistake" to "actual damages," which include damages "for an arrest or prosecution of the customer or other consequential damages." Neither the Uniform Commercial Code (the Code) nor the accompanying comment defines "actual damages" or "consequential damages," or undertakes to set limits on either kind of damages. Similarly, neither the Code nor the commentary refers to claims for emotional distress or to claims arising from an intentional dishonor.

Lack of guidance in the Code has produced diverse responses from courts throughout the country. Ironically, the Code, which was designed to produce uniform results, has in this instance produced diversity, if not confusion. As White &

Summers point out, "[s]ection 4–402 was much re-written during the Code's evolution and is the worse for wear * * *." White & Summers, *supra*, § 17–4 at 667. The New Jersey Study Commission did not address the issue of damages for emotional distress arising from wrongful dishonor, and no New Jersey court has ever considered the issue. Hence, we are remitted to out-of-state cases, analogous New Jersey cases, and secondary authorities.

The out-of-state cases point toward allowing recovery for emotional distress as a result of wrongful dishonor in egregious circumstances. Recovery for emotional distress has been allowed as "consequential damages," *Shaw v. Union Bank & Trust Co.*, 640 *P.*2d 953, 954 (Okla.1981), and as "actual damages," *Kendall Yacht Corp. v. United California Bank*, 50 *Cal.App.*3d 949, 955, 123 *Cal.Rptr.* 848, 854 (1975); White & Summers, *supra*, § 17–4 at 675. Claims for emotional distress have been circumscribed with the requirement of proof that the wrongful dishonor was the result of an intentional tort, gross negligence, willful or wanton conduct, *Farmers and Merchants State Bank of Krum v. Ferguson*, 617 *S.W.*2d 918, 921 (Tex. 1981), and that the bank had acted willfully or maliciously so as to justify a claim for punitive damages, *Bank of Louisville Royal v. Sims*, 435 *S.W.*2d 57, 58 (Ky.1968). As an alternative to proving egregious conduct by the bank, the *Ferguson* court would have required that the emotional distress be accompanied by physical injury. 617 *S.W.*2d at 921. One leading authority, Anderson, *supra*, § 4–402:12 at 155, would limit claims for emotional distress to instances in which the bank acted maliciously, but another authority would not require proof of malice, White & Summers, *supra*, § 17–4 at 675.

The heightened standards for claims of emotional distress are reminiscent of the standard applicable to such claims that arise from a breach of contract. Mental suffering caused by breach of contract "is not generally allowed as a basis for compensation in contractual actions," S. Williston, *A Treatise on the Law of Contracts* § 1341 at 214 (3d ed. 1968) (Williston), but a

breach provides a basis for recovery when it "is wanton or reckless and the harm was foreseeable when the contract was made," *Fiore v. Sears, Roebuck & Co.*, 144 *N.J.Super.* 74, 76 (Law Div.1976); Williston, *supra*, § 1341 at 215.

To the extent that the wrongful dishonor of a check sounds in tort as well as contract, our decisions treating the negligent infliction of emotional distress shed further light on the problem. Underlying those decisions is a constant concern about the genuineness of the claim. The progression has been from denying recovery unless the emotional distress is accompanied by physical impact, *Eyrich for Eyrich v. Dam*, 193 *N.J.Super.* 244, 252 (App.Div.), *cert. denied*, 97 *N.J.* 583 (1984), to permitting recovery if the emotional distress results in physical injury, *Falzone v. Busch*, 45 *N.J.* 559, 569 (1965). More recently, we have found a sufficient guarantee of genuineness, even in the absence of physical injury, if the plaintiff perceives an injury to another at the scene of the accident, the plaintiff and the victim are members of the same family, and the emotional distress is severe. *Portee v. Jaffee*, 84 *N.J.* 88, 93 (1980). We have also found a sufficient assurance in the special circumstances surrounding the claim of parents against a hospital for the negligent mishandling of the corpse of their son, *Strachan v. J.F.K. Memorial Hosp.*, 109 *N.J.* 523 (1988); and in the circumstances surrounding a "wrongful birth" claim of parents who were not advised of the availability of amniocentesis, a procedure that would have indicated that their child could be born with Down's Syndrome, *Berman v. Allan*, 80 *N.J.* 421 (1979).

The history of claims for intentional infliction of emotional distress reflects a similar incremental growth. As late as 1975, the New Jersey courts did not recognize a separate cause of action for intentional infliction of emotional distress. *Hafner v. Hafner*, 135 *N.J.Super.* 328, 332 (Law Div.1975). More recently, however, the Law Division has recognized that extreme or outrageous conduct could give rise to such a cause of action. *Hume v. Bayer*, 178 *N.J.Super.* 310 (Law Div.1981). Both *Hafner* and *Hume* refer to *Restatement (Second) of Torts*,

*supra,* § 46 comment d (1965) (*Restatement*), pertaining to "outrageous conduct causing severe emotional distress." Section 46 provides:

(1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.

(2) Where such conduct is directed at a third person, the actor is subject to liability if he intentionally or recklessly causes severe emotional distress

    (a) to a member of such person's immediate family who is present at the time, whether or not such distress results in bodily harm, or

    (b) to any other person who is present at the time, if such distress results in bodily harm.

Generally speaking, to establish a claim for intentional infliction of emotional distress, the plaintiff must establish intentional and outrageous conduct by the defendant, proximate cause, and distress that is severe. M. Minzer, *Damages in Tort Actions,* vol. I, § 6.12 at 6–22 (1987) (Minzer). Initially, the plaintiff must prove that the defendant acted intentionally or recklessly. For an intentional act to result in liability, the defendant must intend both to do the act and to produce emotional distress. *Id.* at 6–27. Liability will also attach when the defendant acts recklessly in deliberate disregard of a high degree of probability that emotional distress will follow. *Hume, supra,* 178 *N.J.Super.* at 319; *Restatement, supra,* § 46 comment d; Minzer, *supra,* § 6.12[1] at 6–28 to 6–29.

Second, the defendant's conduct must be extreme and outrageous. *Hume, supra,* 178 *N.J.Super.* at 315; Minzer, *supra,* § 6.12[2] at 6–22. The conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Restatement, supra,* § 46 comment d. Third, the defendant's actions must have been the proximate cause of the plaintiff's emotional distress. *Caputzal v. The Lindsay Co.,* 48 *N.J.* 69, 77–78 (1966); Minzer, *supra,* § 6.12[2] at 6–22. Fourth, the emotional distress suffered by the plaintiff must be "so severe that no reasonable man could be expected to endure it." *Restatement,*

*supra,* § 46 comment j; *Hume, supra,* 178 *N.J.Super.* at 317–19; Minzer, *supra,* § 6.12[4] at 6–49 to 6–50. By circumscribing the cause of action with an elevated threshold for liability and damages, courts have authorized legitimate claims while eliminating those that should not be compensable.

■■ The severity of the emotional distress raises questions of both law and fact. Thus, the court decides whether as a matter of law such emotional distress can be found, and the jury decides whether it has in fact been proved. *Restatement, supra,* § 46 comment j. When conduct is directed at a third party, proof of bodily harm is required, *Restatement, supra,* § 46 and comment k, but when the intentional conduct is directed at the plaintiff, he or she need not prove any physical injury, *Hume, supra,* 178 *N.J.Super.* at 319; *Restatement, supra,* § 46 and comment k. It suffices that the conduct produce emotional distress that is severe. *Hume, supra,* 178 *N.J.Super.* at 319; *Portee v. Jaffee, supra,* 84 *N.J.* at 101; *Restatement, supra,* § 46.

Courts in other states have rejected claims for intentional infliction of emotional distress because the emotional distress was not sufficiently severe. *American Rd. Serv. Co. v. Inmon,* 394 *So.*2d 361 (Ala.1980) (resentment at impersonal treatment by employer during internal investigation did not establish severe emotional distress); *Venerias v. Johnson,* 127 *Ariz.* 496, 622 *P.*2d 55 (Ct.App.1980) (testimony that plaintiff became a "nervous wreck" not sufficient to establish severe distress); *Waldon v. Covington,* 415 *A.*2d 1070 (App.D.C.1980) (allegations that plaintiff suffered embarrassment and difficulty insufficient to support a finding of severe emotional distress); *Poulsen v. Russell,* 300 *N.W.*2d 289 (Iowa 1981) (evidence that the plaintiff was feeling "super badly" for one or two months, that he was very disappointed, that he did not know how he and his family were going to make ends meet held insufficient to establish severe emotional distress); *United Telephone Co. of Mo. v. Horn,* 610 *S.W.*2d 701 (Mo.Ct.App.1980) (stress leading

to a headache on one day and non-prescription medicine on one evening insufficient to establish severe emotional distress).

■ Our endeavor, in light of the preceding analysis, is to balance the rights of the bank and its customers. In striking that balance, we recognize that banks often conduct their business through branches, and that customers often do business with more than one branch of the same bank. The result is that over-the-counter transactions are often impersonal, a situation that can create tension between the customer's interest in cashing checks and the bank's interest in verifying the identity of its customers. In this setting, the system sometimes malfunctions. To some extent, slight emotional distress arising from the occasional dishonor of a check is one of the regrettable aggravations of living in today's society. *See Restatement, supra,* § 436A comment b. Accordingly, we are reluctant to allow compensation for the intentional infliction of emotional distress when a bank wrongfully dishonors a check unless the bank's conduct is intentional, as well as reckless or outrageous, and the distress is severe or results in bodily injury. *See Hume, supra,* 178 *N.J.Super.* at 319; *Restatement, supra,* § 46. When those conditions are met, a customer should be compensated for the emotional distress that is caused by the wrongful dishonor of a check.

–III–

■ In the present case, Buckley described his distress:

I lost sleep. I was aggravated. I was embarrassed. I developed headaches, and I suffered nervous tension while this was going on. Mostly, I was embarrassed about my kids, we're talking ten year old kids, ten down, talking about their dad.

We find that this evidence is insufficient as a matter of law to support a finding that the mental distress was so severe that no reasonable man could be expected to endure it. *Restatement, supra,* § 46 comment j. His complaints amount to nothing more than aggravation, embarrassment, an unspecified number of headaches, and loss of sleep. He does not describe

the frequency of the headaches, *see United Telephone, supra,* 610 *S.W.*2d at 704 (testimony as to stress leading to a headache and taking nonprescription medicine as a cure insufficient to establish severe emotional distress), or their length or intensity, *see Davis v. Texaco, Inc.,* 210 *Neb.* 67, 313 *N.W.*2d 221 (1981) (no recovery where plaintiff's distress was not prolonged; evidence establishes merely that plaintiff suffered some embarrassment and humiliation). Buckley does not claim any interference with his every day routine as a result of his mental distress. *Venerias, supra,* 622 *P.*2d at 59 (*prima facie* element of severe emotional distress lacking where there was no proof that plaintiff was hampered in any respect from performing his daily functions). Nor are their any allegations that plaintiff was worried that his wife and children would go without food. *Fletcher v. Western Nat'l Life Ins. Co.,* 10 *Cal.App.*3d 376, 385, 89 *Cal.Rptr.* 78, 87 (4th Dist.1970) (plaintiff could recover for worry and anxiety about losing home and family lacking food and clothing). In fact, Mrs. Buckley received the money in both instances; she cashed the March check at a different branch shortly after the Robbinsville branch declined to cash it.

Our finding of the absence of severe emotional distress renders unnecessary the determination whether the bank's conduct was extreme or outrageous or whether Mrs. Buckley's intervening conduct in complaining to Buckley broke the chain of causation between the dishonor and Buckley's claimed emotional distress. In brief, Buckley has not proved emotional distress sufficiently severe to justify submission of the case to the jury. Consequently, the trial court should have granted the bank's motion to dismiss at the conclusion of the evidence.

We agree with the lower courts that Buckley may not recover punitive damages, the recovery of which depends on common law principles apart from the Code. *N.J.S.A.* 12A:1–106(1); *see also N.J.S.A.* 12A:1–103 ("[u]nless displaced by the particular provisions of this Act, the principles of law and equity * * * shall supplement its provisions."). With rare exception, punitive damages are not available in an action for a breach of

contract, *Pierce v. Ortho Pharmaceutical Corp.*, 84 *N.J.* 58, 72–73 (1980), and have been restricted to tort actions, *Sandler v. Lawn–A–Mat Chem. Equip. Corp.*, 141 *N.J.Super.* 437, 448 (App.Div.1976); Note, "Exemplary Damages in the Law of Torts," 70 *Harv.L.Rev.* 517 (1957).

Other states have denied punitive damages in cases of wrongful dishonor absent conduct that is maliciously intentional, fraudulent, oppressive, or recklessly committed with wanton disregard of the other person's rights. *Loucks v. Albuquerque Nat'l Bank*, 76 *N.M.* 735, 418 *P.*2d 191 (1966); *see also Kendall Yacht Corp., supra*, 50 *Cal.App.*3d 949, 123 *Cal.Rptr.* 848 (no punitive damage award absent malice on the part of bank personnel); *Luxonomy Cars, Inc. v. Citibank, N.A.*, 65 *A.D.*2d 459, 408 *N.Y.S.*2d 951 (2d Dept.1978) (no punitive damages recoverable for wrongful dishonor where bank does not exhibit a "high degree of moral turpitude" and only a private wrong is involved); *In re Brandywine Assocs.*, 30 *U.C.C.Rep.* 1369 (Bankr.D.C.Pa.1980) (punitive damages denied where dishonor not considered "malicious, oppressive or reckless of the rights of the customer").

Punitive damages are allowable, however, when the wrongful dishonor reflects actual malice by a bank officer toward the customer. H. Bailey, *Brady on Bank Checks*, ¶ 20.17 at 20–37 (6th ed. 1987); *see Twin City Bank v. Isaacs*, 283 *Ark.* 127, 672 *S.W.*2d 651, 39 *U.C.C. Rep.* 35 (1984) (punitive damages allowed where bank froze couple's account and refused to release funds for four years upon prompt report that their checkbook had been lost and the discovery that forged checks had been paid); *Yacht Club Sales & Serv., Inc. v. First Nat'l Bank*, 101 *Idaho* 852, 623 *P.*2d 464 (1980) (punitive damages justified where bank places "hold" on customer's account without consulting bank's attorney or notifying customer); *First Nat'l Bank v. Acra*, 462 *N.E.*2d 1345 (Ind.Ct.App. 1984) (punitive damages recoverable where bank made setoff against borrower's account but then represented to the borrow-

er that the account was in order, and the borrower relied on the misrepresentation); *C-K Enters, Inc. v. Depositors Trust Co.*, 438 *A.*2d 262 (Me.1981) (a bank that closed several accounts of a customer's without giving adequate notice was liable for punitive damages because it acted in total disregard of the depositor's rights); *Northshore Bank v. Palmer*, 525 *S.W.*2d 718, 17 *U.C.C. Rep.* 488 (Tex.Civ.App.1975) (punitive damage award justified where depositor notified bank of forgery of his endorsement on a check and the bank refused to take any action, called in a uniformed guard, and then deliberately dishonored the checks on the account, in disregard of the depositor's claim of right).

Absent conduct that is wantonly reckless or malicious, punitive damages should not be allowed for wrongful dishonor. *See Nappe v. Anschelewitz, Barr, Ansell & Bonello*, 97 *N.J.* 37, 49 (1984). Our review of the record leads us to conclude that the bank's conduct, even if viewed as intentional or deliberate, does not contravene that standard.

We need not reach the issue, not raised at trial but projected by *amici*, New Jersey Council of Savings Institutions and New Jersey Bankers Association, that no valid presentment was made by Mrs. Buckley and, therefore, that the bank did not dishonor the checks. *Amici's* point is that a bank may require "reasonable identification of the person making presentment." *N.J.S.A.* 12A:3-505(1)(b). "Reasonable identification" is identification that is reasonable under all the circumstances. *Id.*, *U.C.C.* comment 2. If the party on whom demand for payment is made knows the person making presentment, no requirement of identification is reasonable. *Ibid.* Further, each branch is a separate place of business, *N.J.S.A.* 12A:4-106, *U.C.C.* comment 3, and the fact that a party making presentment is known at one branch does not prevent another branch from making a reasonable request for identification.

Here, the bank required that a person making presentment must maintain an account at the branch where presentment is

made or provide other reliable proof of identification. Believing that the requirement was consistent with "local practice" and necessary to protect its depositors, the bank contends that its requirements were reasonable. *Amici* contend that because Mrs. Buckley did not comply with those requirements, she did not make a valid presentment and, therefore, the bank did not dishonor her checks. Before the lower courts, however, the bank did not contest the sufficiency of evidence to support a finding that it intentionally dishonored the checks. Because we have otherwise found that Buckley failed to establish a cause of action for wrongful dishonor, we need not determine whether Mrs. Buckley made a valid presentment. Suffice it to state that a bank may require a party making presentment to comply with reasonable requirements for identification.

The judgment of the Appellate Division is modified, and the matter is remanded to the Law Division for entry of an order dismissing the complaint.

HANDLER, J., concurs in the result only.

*For modification and remand*—Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI, and STEIN—7.

*Opposed*—None.