Calvin PHILLIPS, Jr., a minor by his parents and natural guardians, Cheryl Phillips and Calvin Phillips, and Cheryl Phillips and Calvin Phillips in their own right, Plaintiffs,

v.

COOPER OB/GYN ASSOCIATES, Dr. I.G. Ances, Dr. P. Enzo DiFlorio, and Dr. Brubaker, Defendants.

Civ. A. No. 90–3659.

United States District Court, D. New Jersey.

Dec. 30, 1992.

Marc G. Brecher, Wapner, Newman & Associates, Philadelphia, PA, and Robert J. Kelley, Jr., Cherry Hill, NJ, for plaintiffs.

Carolyn J. Reinhard, Parker, McCay & Criscuolo, P.A., Marlton, NJ, for defendants.

BROTMAN, District Judge.

Presently before the court in this medical malpractice litigation is defendants' motion for partial summary judgment on the claim of negligent infliction of emotional distress. Upon consideration of the parties' submissions, and for the reasons set forth below, the court denies defendants' motion.

## I. Background

On February 19, 1989, Cheryl Phillips gave birth to Calvin Phillips, Jr. ("Calvin Jr.") at the Cooper Hospital/University Medical Center ("Cooper Hospital") in Camden, New Jersey. During delivery, Calvin Jr.'s shoulders got stuck in the birth canal, allegedly because he was too large.[1] The attending physician, Dr. P. Enzo DiFlorio, used force in order to complete delivery and Calvin Jr.'s head was bruised and he sustained a contusion on the left anterior side of his chest. Plaintiffs claim that Dr. DiFlorio's use of force during delivery caused permanent damage to Calvin Jr.'s left shoulder, left arm, and left hand.

In August 1990, plaintiffs filed the present medical malpractice suit. The complaint states claims sounding in negligence on behalf of Calvin Jr. against Dr. DiFlorio,

---

**1.** At birth, Calvin Jr. apparently weighed 11 pounds and seven and one-half ounces. Pl.'s Brief at 2.

**1020**

as well as against Dr. Brubaker, another attending physician at the delivery room, and Dr. I.G. Ances and Cooper OB/GYN Associates ("Cooper OB/GYN"), who were in charge of Mrs. Phillips's prenatal care.[2] The alleged instances of medical negligence include: failure to evaluate Mrs. Phillips for gestational diabetes; failure to perform an ultrasound to determine the size of the baby; failure to perform a caesarian section to deliver the baby; and failure to properly deliver the baby. Count three of the complaint, which states a claim on behalf of Mr. and Mrs. Phillips for emotional distress damages resulting from defendants' negligence, is the subject of the instant motion.[3]

Plaintiffs have presented evidence that Mr. Phillips was present with his wife in the delivery room and that they observed their son's suffering and injuries contemporaneously with his birth. Mr. Phillips testified that he observed Dr. DiFlorio "pulling on [Calvin Jr.'s] right side first, kind of got the left side stuck, he was pulling on the shoulder, and that's when [Dr. DiFlorio] said 'I heard a snap.'" Mr. Phillips's Dep. at 22. Mrs. Phillips testified that she

> pushed ... for about a half an hour ... until I heard [Dr. DiFlorio] say okay, I see the top of the head, and then I kept pushing and kept pushing, and then he said to me, if you don't push, you're going to lose the baby.
>
> .   .   .   .   .
>
> I couldn't see where [Dr. DiFlorio] was pulling ... but I saw his hands, and then I kept pushing, and then he just pulled the baby ... out, and when he pulled him out he threw his, he threw him on my stomach....

Mrs. Phillips' Dep. at 41, 42–43. Both Mr. and Mrs. Phillips testified that they observed bruises on Calvin Jr.'s head, neck, and left shoulder and arm immediately af-

ter delivery. Mrs. Phillips' Dep. at 45; Mr. Phillips' Dep. at 21.

Plaintiffs do not put forward any evidence to show that Mr. and Mrs. Phillips had knowledge of a medical misdiagnoses at the time of delivery. There is, however, evidence that Mr. and Mrs. Phillips observed allegedly negligent acts on the part of some of the defendants. Mr. Phillips testified that

> I knew once Dr. DiFlorio said he heard a snap and I saw the way he was pulling, and I knew [Calvin Jr.'s] arm was puffy and red and pink, so I knew that [Dr. DiFlorio] had pulled something, but I didn't know if he had broken the collar bone or pulled the arm out of the socket....

Mr. Phillips' Dep. at 21. Mrs. Phillips testified that when Dr. DiFlorio "pulled [Calvin Jr.] out, he threw him ... on my stomach ... and [Calvin Jr.] fell like on my side." Mrs. Phillips' Dep. at 43.

Mr. and Mrs. Phillips allege that they "have suffered severe emotional distress, which will continue into the future for an indefinite time, as a result of witnessing the disabilities (which could have been prevented in the absence of negligence) and needless suffering of their child caused by defendants' negligence." Compl. ¶ 25. It is undisputed that Mr. and Mrs. Phillips did not seek any type of psychological counseling as a result of witnessing the birth of their son. *See* Pls.'s Brief at 11–12. However, Mr. Phillips testified that he found Calvin Jr.'s birth "very upsetting," especially in comparison with the normal delivery of his daughter, Brittany, which he had also witnessed. Mr. Phillips's Dep. at 32–33. Moreover, in their certified answers to defendants' emotional distress interrogatories, Mr. and Mrs. Phillips stated:

> We, as parents are deeply concerned for Calvin, Jr. and what effect this will have

---

**2.** Cooper Hospital, which was originally named as a defendant, was voluntarily dismissed from the case by plaintiffs.

**3.** *In addition to this emotional distress claim, count three appears also to state on behalf of Mr. and Mrs. Phillips separate and distinct claims for loss of Calvin Jr.'s economic earnings

and services and loss of his society, companionship, support, and consortium. Compl. ¶¶ 27–28. Since defendants' partial summary judgment motion is limited to the parents' emotional distress claim, the court does not address plaintiffs' loss of earnings and companionship claims.

on his life. We are worried about his future, which we feel is at stake. There is not one day that goes by that we don't worry about him. What the future holds for him. I'm angry, frustrated and hurt that this happened to my son. I'm frustrated because as a parent I want to do everything possible to help my child in any way, but in this case, there is nothing I can do to change what has happened and I feel helpless.... While other parents were celebrating the birth of their child, I was left with feelings of devastation. I was not able to celebrate because I was feeling the pain for my son; hoping and praying he would survive.

Pl.'s Brief, exh. F. Mr. and Mrs. Phillips also stated that they are constantly "afraid" for Calvin Jr. and that "for now [we] don't see our lives ever being the way it was before." *Id.*

## II. Discussion

Defendants' move for partial summary judgment on Mr. and Mrs. Phillips's claim of negligent infliction of emotional distress.[4] Defendants contend that the facts put forward by plaintiffs at this point in the litigation are insufficient to satisfy two elements for an emotional distress claim under New Jersey law. Before turning to the merits of defendants' argument, the court first discusses the methodology for analyzing a summary judgment motion.

The standard for granting summary judgment is a stringent one. A court may grant summary judgment only when the materials of record show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Tudor Development Group, Inc. v. United States Fidelity & Guaranty Co.*, 968 F.2d 357, 359–60 (3d Cir.1992). The threshold inqui-

ry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). In making this analysis, the court must resolve all doubts in favor of the non-moving party. *Desvi, Inc. v. Continental Ins. Co*, 968 F.2d 307, 308 (3d Cir.1992). Summary judgment is appropriate if the party opposing the motion "fails to make a [factual] showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). If the nonmovant's evidence is merely "colorable" or is "not significantly probative," the court may apply the controlling law to the undisputed facts and grant summary judgment. *Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2510–11.

In order to ascertain which facts are "material" for the purposes of summary judgment, the court must look to the substantive law governing the case. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. In the present case, the disputed claim is for the negligent infliction of emotional distress. The parties are in apparent agreement that this is a bystander case governed by *Portee v. Jaffe*, 84 N.J. 88, 417 A.2d 521 (1980), and its progeny. Four elements must be proved in order to recover under this cause of action:

1. The death or serious physical injury of another caused by the defendants' negligence;

2. A marital or intimate familial relationship between plaintiff and the injured person;

---

4. Defendants also move, pursuant to Federal Rule of Civil Procedure 41(b), for involuntary dismissal at the close of plaintiffs' case. Rule 41(b) provides that:

> After the plaintiff, in an action tried by the court without a jury, has completed the presentation of evidence, the defendant, without waiving the right to offer evidence in the event the motion is not granted, may move

for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. Fed.R.Civ.P. 41(b). The court denies this motion. First, the present case will involve a jury trial, so Rule 41(b) by its terms is inapplicable. Second, the proper time to bring this type of motion is during trial, after plaintiffs have rested their case.

3. Observation of the death or injury at the scene of the accident; and

4. Resulting severe emotional distress. *Id.* at 101, 417 A.2d 521. Defendants do not dispute any of the facts put forth by plaintiffs. Rather, defendants argue that summary judgment on this claim is warranted because plaintiffs' evidence is insufficient as a matter of law to satisfy elements three and four.

### A. Element Three: Observation of Injury at the Scene of the Accident

■ In the recent case of *Frame v. Kothari*, 115 N.J. 638, 560 A.2d 675 (1989), the New Jersey Supreme Court addressed the observation requirement for an emotional distress claim in a medical misdiagnosis case. In *Frame*, plaintiffs sued a physician for failure to diagnose and properly treat an infant who had fallen down a flight of stairs. The physician discharged the infant under the care of his parents with directions to telephone if the infant's condition changed. At 2:00 p.m., the parents called the physician after the infant had vomited and after observing that the infant's eyes were pivoting in his eye sockets. The physician advised the parents to let the infant sleep for four more hours. But when the parents tried to wake him at 6:00 p.m., the infant was moribund. They immediately took the infant to the hospital, where x-rays revealed a blood clot at the rear of his skull. The infant died early the next morning. *Id.* at 640–41, 560 A.2d 675.

In *Frame*, the court articulated a heightened standard for satisfying the observation element for a negligent infliction of emotional distress claim in a medical misdiagnosis case. The court required a temporal nexus between the misdiagnosis and a plaintiff's observation of a family member's death or injury. According to the supreme court:

> a misdiagnosis normally does not create the kind of horrifying scene that is a prerequisite for recovery. Rarely will a member of the patient's family contemporaneously observe the immediate consequences of the defendant's misdiagnosis, and even more rarely will the results of the misdiagnosis be the injury or

death of a loved one contemplated by the gruesome scene portrayed in *Portee*. *Id.* at 647–48, 560 A.2d 675. The court, therefore, ruled that recovery should be denied "for emotional distress resulting from the misdiagnosis of another family member, at least in the absence of a close temporal connection between the misdiagnosis and the injury, as well as the contemporaneous observation of the injury by the family member." *Id.* at 645–46, 560 A.2d 675.

Applying this rule of law, the supreme court in *Frame* affirmed the appellate court's reversal of a verdict for plaintiffs. The sole basis for the parents' emotional distress claim was the physician's negligence in failing to tell the parent in the 2:00 p.m. telephone conversation to bring the infant to the hospital. Because "[t]he diagnosis ... did not manifest itself in an immediate injury" and because the parents "witnessed the pain and suffering of their child ... without awareness that a medical misdiagnosis was contributing to their child's continued pain and suffering," the court held that no claim for the negligent infliction of emotional distress could lie. *Id.* at 650, 560 A.2d 675.

In the present case, defendants argue that Mr. and Mrs. Phillips' claim is based on two instances of medical misdiagnosis. The first is that Dr. Ances failed to diagnose gestational diabetes in the 28th week of Mrs. Phillips' pregnancy. The second is that Dr. Brubaker and Dr. DiFlorio failed to diagnose an excessively large fetus when Mrs. Phillips arrived at Cooper Hospital on February 18, 1989, the day before delivery. Defendants do not contest that Mr. and Mrs. Phillips have put forward evidence that they observed Calvin Jr. being injured during the delivery. Rather, they contend that because Mr. and Mrs. Phillips were unaware of any misdiagnosis at the time of delivery, recovery for the negligent infliction of emotional distress is precluded under *Frame*.

Plaintiffs do not disagree with defendants' proposed reading of *Frame*. They argue instead that *Giardina v. Bennett*, 111 N.J. 412, 545 A.2d 139 (1988), not

*Frame*, supplies the controlling law. In *Giardina*, an expectant mother, nearly two weeks overdue, was informed by her physician that a test had revealed no problems with the pregnancy. Over the next nine days, the physician twice examined the expectant mother, who continued to experience intermittent pain and contractions. When, finally, her contractions were three minutes apart, the physician instructed the expectant mother to report to the hospital. After examining the mother, the physician determined that the baby was dead. The next afternoon, the mother was given a drug to induce labor, and the baby was delivered stillborn. *Id.* at 414, 545 A.2d 139.

The court in *Giardina* held that the physician's alleged "medical malpractice causing an infant stillbirth constitutes a tort against the parents, entailing the direct infliction of injury, their emotional distress and mental suffering, for which they are entitled to recover compensatory damages." *Id.* at 413, 545 A.2d 139. The *Giardina* court grounded this holding in its observation that:

> The malpractice is directed against the expectant parents and the unborn child. The gravity of such negligence, the foreseeability of parental suffering, and the genuineness of injury and loss, all of which *inhere in a birth attended by tragedy*, present a compelling case for recognition of the direct injury to the parents. In a case such as this, the defendant's alleged malpractice results in serious and devastating loss to the parents, the death of their eagerly expected healthy baby, and, predictably, engenders emotional distress and mental anguish.

*Id.* at 417, 545 A.2d 139 (emphasis added).[5]

The court holds that there are two grounds for finding *Frame* inapplicable to the present case. First, a careful reading of *Frame* reveals that the supreme court has apparently left open an exception to the heightened observation standard in emotional distress claims based on medical misdiagnosis whenever a child's injuries become apparent only upon birth.[6] In *Frame*, the court's primary concern was to "separat[e] the grief that attends [severe emotional] distress when no one is at fault from the added stress attributable to the fact that the injury or death was produced by the negligent act of another." 115 N.J. at 642, 560 A.2d 675. In light of this concern, the court distinguished *Giardina* because of the unique characteristics of pregnancy. The new temporal nexus requirement for the observation element need not apply to the facts of *Giardina* because " 'the experience of pregnancy and child birth itself constitutes the immediacy and presence of the claimant in the face of inflicted personal injury or death of a loved one.' " *Id.* at 644, 560 A.2d 675 (quoting *Giardina*, 111 N.J. at 419–20, 545 A.2d 139). In the present case, the distress-causing injury manifested itself at the time of Calvin Jr.'s birth. Accordingly, the court holds that, as in *Giardina*, the heightened temporal nexus formulated in *Frame* does not apply to this factual situation.

The second ground for holding *Frame* inapplicable is that the present case, contrary to defendants' assertions, does not involve only medical misdiagnosis. Rather, plaintiffs allege that some of the defendants failed to perform a caesarian and failed to properly deliver the baby. These claims clearly involve negligent medical practice, not diagnosis. *Frame* invoked a temporal nexus only for distress claims arising from misdiagnosis, and therefore does not apply.

---

5. The court made these observations after a review of its past "genetic counselling malpractice" cases. *See Schroeder v. Perkel*, 87 N.J. 53, 63, 432 A.2d 834 (1981) (parents entitled to recovery for emotional distress resulting from physician's negligent failure to inform of risk of having second child with genetic disorder); *Berman v. Allan*, 80 N.J. 421, 434, 404 A.2d 8 (1979) (court allows parents' recovery for emotional distress resulting from child being born with a congenital defect); *see also Procanik v. Cillo*, 97 N.J. 339, 478 A.2d 755 (1984).

6. Although it is true that the court in *Frame* did not characterize *Giardina* as a medical misdiagnosis case, a fair reading of *Giardina* clearly requires such a description. This court, therefore, must reconcile the two cases.

For these reasons, the third element under *Portee* is satisfied as long as the injury was observed at the scene of the accident. Plaintiffs have clearly put forth sufficient evidence for a jury to conclude that Mr. and Mrs. Phillips observed the injury to Calvin Jr. Partial summary judgment based on element three is therefore denied.

## B. *Element Four: Severe Emotional Distress*

■ Defendants also argue for partial summary judgment on the ground that Mr. and Mrs. Phillips fail to put forward sufficient evidence to establish severe emotional distress, as required under *Portee*. An analysis of this argument entails two inquiries. First, what is the scope of emotional distress for which a claim may lie under New Jersey law. Second, whether Mr. and Mrs. Phillips' evidence of the emotional injuries they have endured fails to rise to a sufficiently severe level so as to warrant summary judgment.

As to the scope of cognizable emotional distress, the parties are in agreement that the psychic injuries suffered by Mr. and Mrs. Phillips around the time that Calvin Jr. was injured is cognizable. Apparently in dispute, however, is whether emotional distress which a plaintiff endures *after* the underlying injury is recoverable. In essence, defendants ask this court to exclude any evidence of emotional distress experienced subsequent to Calvin Jr.'s injuries. Defendants would have this court read a temporal nexus, as adopted in *Frame* by the New Jersey Supreme Court in regard to the observation element, into the element of severity, and thereby restrict damages to emotional distress that suffered at the time of the underlying, distress-causing injury.

This proposition is clearly wrong. The observation element goes to the *origin and cause* of the psychic injury, and the *Frame* temporal nexus requirement helps to ensure the genuineness of the injury in medical misdiagnosis cases. In contrast, the severity requirement addresses the *level* of injury which must be experienced before recovery is allowed. The severity element ensures genuineness by imposing a minimum threshold level of injury for recovery. It does not place a time constraint on when the psychic injury must manifest itself. Indeed, a review of the New Jersey case law reveals that plaintiffs in emotional distress cases may recover for psychic injuries experienced subsequent to the underlying event. As the supreme court stated in *Evers v. Dollinger*, 95 N.J. 399, 471 A.2d 405 (1984): " '[C]ourts have come to recognize that mental and emotional distress is just as "real" as physical pain'.... Such distress could well encompass concern over the anticipated future consequences of malpractice." *Id.* at 410, 471 A.2d 405 (quoting *Berman v. Allan*, 80 N.J. 421, 433, 404 A.2d 8 (1979)). Accordingly, this court will measure the severity of Mr. and Mrs. Phillips' emotional injuries by looking to evidence of psychic injury experienced not only at the time of Calvin Jr.'s injuries, but thereafter as well.

■ In *Buckley v. Trenton Saving Fund Society*, 111 N.J. 355, 544 A.2d 857 (1988), the supreme court addressed the severity requirement in the context of a claim for intentional infliction of emotional distress.[7] The court stated that "the emotional distress suffered by the plaintiff must be 'so severe that no reasonable man could be expected to endure it.' " *Id.* at 366, 544 A.2d 857 (quoting Restatement (Second) Torts § 46 comment j (1965)). The severity requirement raises questions of both law and fact, and may be determined by the court on summary judgment. *Id.* at 367, 544 A.2d 857. In *Buckley*, plaintiff claimed emotional distress damages resulting from a bank's wrongful dishonor of two child support checks to his former spouse. The court held as a matter of law that the alleged distress was not sufficiently severe where the evidence established aggravation, embarrassment, unspecified number of headaches, and sleep loss. *Id.*

---

7. Although *Buckley* concerned intentional infliction of emotional distress, New Jersey courts use it as authority for claims of negligent inflic-

tion of emotional distress. *E.g. Advisory Commission v. Diamond Shamrock*, 243 N.J.Super. 170, 174, 578 A.2d 1248 (App.Div.1990).

at 368, 544 A.2d 857. The court focused on three factors in applying the severity test: (1) the frequency of the distress; (2) the length or intensity of the distress; and (3) the interference caused by the distress in everyday life. *Id.* at 368–69, 544 A.2d 857; *see also* Restatement (Second) Torts § 46 comment j ("The intensity and the duration of the distress are factors to be considered in determining its severity."). Because the goal of the severity requirement is to ensure "the genuineness of the claim," *Buckley*, 111 N.J. at 355, 544 A.2d 857, a court may also test severity by looking to the facts and circumstances of the underlying injury.

Applying these factors to the present case, the court finds that Mr. and Mrs. Phillips have put forth sufficient evidence of severity. First, Mr. and Mrs. Phillips have testified that observing the injury to Calvin Jr. was a deeply disturbing event. Indeed, the court is convinced that the parents' experience of observing the injury of their child during childbirth as a result of medical negligence is one that gives rise to genuine claims of psychic injury. *Cf. Giardina*, 111 N.J. at 415, 545 A.2d 139.[8] Second, Mr. and Mrs. Phillips, in their answer to defendants' interrogatories, have clearly stated that the distress they experience after Calvin Jr.'s injury is continual, frequent, and profound. Accordingly, the court holds that there is sufficient evidence for a jury to conclude that Mr. and Mrs. Phillips have met their burden on the third element of *Portee*.

III. Conclusion

It appears that the New Jersey Supreme Court's primary concern in its recent emotional distress decisions is "the genuine-

ness of the claim." *Buckley v. Trenton Saving Fund Society*, 111 N.J. 355, 365, 544 A.2d 857 (1988).[9] It is, however, clear to this court that current New Jersey precedent establishes a high degree of reliability for claims of psychic injury resulting from alleged medical negligence involving pregnancy and childbirth. Accordingly, for the reasons stated above, the court denies defendants' motion for summary judgment.

---

8. The *Giardina* court stated that:
   Medical malpractice causing a stillbirth results in infliction of a direct injury to the mother as well as to her unborn child. Even without any permanent physical harm, the mother suffers severe and genuine injuries in the form of emotional distress and mental anguish occasioned by her baby's stillbirth. This suffering is experienced, also, by the father of the infant. Thus, in a case such as this, the injury suffered by the mother and father on the stillbirth of their eagerly expected first child is palpable and predictable.

111 N.J. 412, 415, 545 A.2d 139 (1988).

9. *But see Frame v. Kothari*, 115 N.J. 638, 651–53, 560 A.2d 675 (1989) (Wilentz, C.J., and Garibaldi, J., concurring) (observing that social policy concerns, including "the increasing number of physicians who refuse to practice in certain fields, the costs, in all fields of an increase in 'defensive medicine,' and the increasing cost of medical treatment itself," may require an end to expanding liability for bystander emotional distress).