**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3439-18

P.C.,

     Plaintiff-Appellant,

v.

J.P.Q.,

     Defendant-Respondent.

_____

        Argued January 11, 2021 – Decided February 17, 2021

        Before Judges Gooden Brown and DeAlmeida.

        On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-5258-11.

        P.C., appellant, argued the cause pro se.

        Respondent has not filed a brief.

PER CURIAM

Plaintiff P.C.[1] appeals from three orders of the Law Division: (1) a November 15, 2018 order granting summary judgment in favor of defendant J.P.Q. on P.C.'s allegations of malicious prosecution, abuse of process, and infliction of emotional distress; (2) a December 4, 2018 order denying P.C.'s motion to compel J.P.Q. to pay P.C.'s costs and attorney's fees for having lied in an affidavit submitted to the court; and (3) a January 25, 2019 order denying P.C.'s motion for reconsideration. We affirm.

I.

The following facts are derived from the record. P.C. and J.P.Q. began a romantic relationship in 2006. In June 2007, P.C. was convicted of the murder of his former girlfriend. He was incarcerated until September 2009, when his conviction was reversed and he was released on bail pending a re-trial. After his release, P.C. resumed his romantic relationship with J.P.Q. The relationship ended in September 2010.

On October 12, 2010, J.P.Q. filed a domestic violence complaint alleging harassment against P.C. pursuant to the Prevention of Domestic Violence Act, N.J.S.A. 2C:25-17 to -35. During the ex parte hearing before a municipal court

---

[1] We use initials to preserve the confidentiality of court records concerning domestic violence. R. 1:38-3(d)(9).

judge on her application for a temporary restraining order (TRO), J.P.Q. testified that P.C. was following her and texting her "every single day" since the end of their relationship, despite her instructions to him to leave her alone. She testified that she was in fear for her life and the lives of her children. The complaint also alleged that P.C. texted J.P.Q. a photograph of her topless and later called her and threatened to bring a copy of the photograph to her place of employment.

In addition to issuing the TRO, the municipal court judge found probable cause for the issuance of a criminal complaint charging P.C. with harassment, N.J.S.A. 2C:33-4. The police officer who responded to J.P.Q.'s home after she called to report P.C. appeared before the municipal court judge to swear the complaint. When questioned by the court, the police officer told the judge that he had "viewed [J.P.Q.'s] cell phone" and saw "[fifteen] text messages from the 1st of October up until today . . . trying to reconnect with her." According to the officer, one of the text messages was "a picture text" of "an intimate photo" showing J.P.Q. topless, which "[P.C.] basically threatened to print . . . and bring . . . to [J.P.Q.'s] place of employment . . . ." The officer stated that J.P.Q. told him "all these text messages started" after J.P.Q. told P.C. "she want[ed] no part of him anymore" and refused to "testify on his behalf . . . as a character witness" at his upcoming re-trial on the murder charge.

3

On October 13, 2010, P.C. was served with the TRO, arrested on the criminal complaint, and jailed. On the same date, the prosecutor on the murder charge filed an application in the Law Division to revoke P.C.'s bail and remand him to custody pending the conclusion of his re-trial, which was then underway. The application was predicated on the TRO and the criminal harassment complaint. The prosecuting attorney argued that P.C. was a danger to the community based on his "history of domestic violence with respect to his former wife and because of his actions now . . . ." Instead of revoking P.C.'s bail on the murder charge, the Law Division judge increased the bail from $1 million to $1.3 million, resulting in P.C. being remanded to custody. He remained in the county jail until he was convicted of murder at his re-trial.

On November 19, 2010, the Family Part held a hearing on J.P.Q.'s application for a final restraining order (FRO). P.C. disputed that he engaged in harassing conduct, claiming he and J.P.Q. "were involved in a dialogue about the relationship[.]" At the hearing, P.C.'s aunt testified that she had two phone conversations with J.P.Q. in September 2010 during which J.P.Q. demanded money she believed P.C. owed her for a credit card debt. According to P.C.'s aunt, J.P.Q. threatened to "have [P.C.] arrested" if he did not pay the debt. J.P.Q. denied having said that to P.C.'s aunt.

A-3439-18

On cross-examination, J.P.Q. denied calling P.C.'s aunt solely about the credit card debt. She testified that she called his aunt because P.C. "was scaring [her] because of the picture" and P.C. had threatened "that if [she] were to call the attorney and his aunt . . . to tell them what was going on[,] that [she] was going to regret it."

Ultimately, a Family Part judge denied J.P.Q.'s application for an FRO, finding she did not prove a predicate act of domestic violence. As a result, the court dismissed both the TRO and the domestic violence complaint. The criminal complaint charging P.C. with harassment was later dismissed for J.P.Q.'s failure to appear at trial. J.P.Q. moved to restore the criminal complaint out-of-time. A judge denied J.P.Q.'s motion but modified the dismissal order to indicate that the dismissal was "not based on [the] victim's failure to appear."

P.C. subsequently filed a four-count complaint in the Law Division against J.P.Q. alleging malicious prosecution, malicious abuse of process, intentional, reckless, or negligent infliction of emotional distress, and breach of contract.[2] P.C. alleged that after his release from prison he "made various

---

[2]  P.C.'s breach of contract claim alleged he was entitled to $7070 as compensation for repairs and improvements he made at properties owned by J.P.Q. That claim was dismissed without prejudice in an August 11, 2014 order which P.C. did not appeal.

improvements to and fixed various items in [J.P.Q.'s] residence and an investment property she owned[,]" and that she "permitted [him] to use her credit card to buy construction materials needed" for the work. However, as P.C.'s re-trial approached, J.P.Q. demanded payment of $6000 in credit card charges and threatened to take legal action against him if he did not pay. P.C. alleged that when he refused J.P.Q.'s demands because he did not owe her any money, J.P.Q. "without any probable cause and with malice swore out a criminal complaint" against him alleging harassment and caused the TRO to be issued against him. He alleged that as a result of J.P.Q.'s malicious prosecution and malicious abuse of process he was arrested, imprisoned, and forced to defend against her false charges, causing him severe emotional distress.

After a failed attempt at arbitration, J.P.Q. moved for summary judgment. In an affidavit supporting her motion, she averred that she filed the harassment complaint on the advice of the police officer who investigated her complaint. P.C. opposed the motion and requested oral argument.

The trial court granted the motion, without oral argument, and dismissed the three counts of the complaint alleging tort claims. The only reasoning provided by the motion judge was a notation on the order stating "charges

6

pursued in municipal court [and] substantiated. Court found sufficient probable cause for claims. Thus no genuine issue of material facts in dispute."

On February 14, 2018, we vacated the trial court's order granting summary judgment. P.C. v. J.P.Q., No. A-0185-14 (App. Div. Feb. 14, 2018). We concluded that the trial court erred when it denied P.C.'s request for oral argument without stating reasons for the denial, see Rule 1:6-2(d), and failed to make written or oral findings of fact and conclusions of law, see Rule 1:7-4(a). We remanded the matter and directed the trial court to consider the motion anew after hearing oral argument and to issue findings of fact and conclusions of law explaining the basis for its decision.

On remand, after hearing oral argument, the trial court issued a written opinion granting summary judgment to J.P.Q. on all claims. The court concluded that P.C. could not establish his malicious prosecution claims because "[i]ndependent of any testimony provided by [J.P.Q.]" regarding the criminal harassment complaint against P.C. "the municipal court considered the testimony of the police officer who investigated the allegations." The court explained that the officer's

> testimony concerned his review of the texts and the offending photograph. The police officer's testimony on its own provided the basis for the finding of probable cause. Assuming arguendo[] that [J.P.Q.'s] testimony

7

was fabricated[] or willfully false, the municipal court judge had enough from the police officer's testimony to make a probable cause finding for harassment and the TRO.

The court also found that P.C. could not prove his abuse of process claim.

The court held that

> [a] successful claim of abuse of process requires proof that the defendant made an improper, illegal and perverted use of the legal procedure for an ulterior motive. In the view of this court, the finding of probable cause by the municipal court and the above-referenced independent basis for that finding subverts the claim of abuse of process. Once the municipal court judge found probable cause to exist for the complaint and the TRO, the issue of whether [J.P.Q.] made an improper use of the process was dispatched. The motive for this proper use of the process became immaterial once the finding of probable cause was made.

Finally, the court concluded that P.C. could not establish his claim of intentional, negligent, or reckless infliction of emotional distress. The court found that

> [i]t cannot be said that [J.P.Q.] didn't act intentionally when she made her harassment complaint or when she sought the TRO. Such conduct must be proved to be extreme and outrageous so as to exceed the bounds of decency. Testifying falsely before a judicial officer and falsely reporting any claim to police would certainly be extreme and outrageous. Again, the judicial determination that the testimony was credible, coupled with the independent testimony of the police officer,

8

> negates any ability of [P.C.] to prove the necessary intent to inflict emotional distress.

A November 15, 2018 order memorializes the court's decision.

On December 4, 2018, the court entered an order denying P.C.'s motion to compel J.P.Q. to pay his expenses and attorney's fees for having filed a false affidavit with the court. The court reasoned that the motion was moot in light of its decision granting summary judgment to J.P.Q.

P.C. subsequently moved for reconsideration of both the November 15, 2018 order and the December 4, 2018 order. The trial court denied the motion, concluding that "[a]ll the arguments and information raised upon reconsideration were previously raised and duly considered by the [c]ourt." A January 25, 2019 order memorializes the court's decision.

This appeal followed. Plaintiff raises the following arguments for our consideration.

> POINT I
>
> THE COURT BELOW COMMITTED REVERSIBLE ERROR WHEN IT FAILED TO ORDER [J.P.Q.] TO PAY [P.C.'s] REASONABLE EXPENSES AND ATTORNEY FEES FOR KNOWINGLY AND INTENTIONALLY FILING AN AFFIDAVIT IN BAD

9

FAITH AND ADJUDGE HER GUILTY OF CONTEMPT.[3]

POINT II

THE COURT BELOW COMMITTED REVERSIBLE ERROR BY ISSUING AN OPINION MUDDLED WITH FACT FINDING ERRORS AND BY THE ENTRY OF SUMMARY JUDGMENT AND DISMISSAL OF COUNTS ONE, TWO AND THREE OF THE PLAINTIFF'S COMPLAINT CONTRARY TO THE GENUINE ISSUES OF MATERIAL FACTS PRESENTED WHICH DEFEAT SUMMARY JUDGMENT AND SHOULD BE SUBMITTED TO THE JURY.

POINT III

THE COURT BELOW COMMITTED REVERSIBLE ERROR AND ABUSED ITS DISCRETION BY PROVIDING THE PARTIES WITH AN OPINION DEVOID OF CITATION TO EVEN A SINGLE CASE IN SUPPORT OF ITS DECISION TO GRANT SUMMARY JUDGMENT RESULTING IN AN ARBITRARY AND CAPRICIOUS DISMISSAL OF COUNTS ONE, TWO AND THREE OF THE PLAINTIFF'S COMPLAINT.

---

[3] P.C. does not list the December 4, 2018 order in his notice of appeal or case information statement. He does, however, address the order in his brief. Normally, we do not consider judgments or orders not identified in the notice of appeal. See R. 2:5-1(e)(3)(i) (stating that a notice of appeal "shall designate the judgment, decision, action or rule, or part thereof appealed from"); Fusco v. Bd. of Educ., 349 N.J. Super. 455, 461-62 (App. Div. 2002) (stating that appellate review pertains only to judgments or orders specified in the notice of appeal). In light of the fact that our decision with respect to the trial court's November 15, 2018 and January 25, 2019 orders obviates P.C.'s demand for costs and attorney's fees, we affirm the December 4, 2018 order.

## II.

We review the trial court's decision granting summary judgment de novo, using "the same standard that governs trial courts in reviewing summary judgment orders." Prudential Prop. & Cas. Ins. Co. v. Boylan, 307 N.J. Super. 162, 167 (App. Div. 1998). Rule 4:46-2(c) provides that a court should grant summary judgment when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." "Thus, the movant must show that there does not exist a 'genuine issue' as to a material fact and not simply one 'of an insubstantial nature'; a non-movant will be unsuccessful 'merely by pointing to any fact in dispute.'" Prudential, 307 N.J. Super. at 167 (quotations omitted).

Self-serving assertions that are unsupported by evidence are insufficient to create a genuine issue of material fact. Miller v. Bank of Am. Home Loan Servicing, L.P., 439 N.J. Super. 540, 551 (App. Div. 2015). "Competent opposition requires 'competent evidential material' beyond mere 'speculation' and 'fanciful arguments.'" Hoffman v. Asseenontv.Com, Inc., 404 N.J. Super. 415, 426 (App. Div. 2009) (citations omitted). We review the record "based on

11

our consideration of the evidence in the light most favorable to the parties opposing summary judgment." Brill v. Guardian Life Ins. Co., 142 N.J. 520, 523-24 (1995).

Having carefully reviewed the record in light of these precedents, we find no grounds to reverse the trial court's November 15, 2018 order. We agree with the central premise of the trial court's decision: that the municipal court's finding of probable cause for the criminal harassment complaint and TRO based on the testimony of a police officer nullifies each of P.C.'s tort claims.

The municipal court's finding of probable cause negated a necessary element of P.C.'s malicious prosecution claim. Lind v. Schmid, 67 N.J. 255, 262 (1975). "The essence of the cause of action is lack of probable cause. Particularly, the plaintiff must establish a negative, namely, that probable cause did not exist." Brunson v. Affinity Federal Credit Union, 199 N.J. 381, 394 (2009) (internal quotation and citations omitted). The fact that a judge later determined that J.P.Q. had not established the necessary elements for an FRO and the criminal harassment complaint was dismissed does not equate with a finding that there was an absence of probable cause to initiate those proceedings.

The municipal court's probable cause finding also precluded P.C.'s malicious abuse of process claim. The substantive distinction between

malicious use, which is the civil equivalent of malicious prosecution, and malicious abuse of process is simply "that the malicious use is the employment of process for its ostensible purpose, although without reasonable or probable cause, whereas the malicious abuse is the employment of a process in a manner not contemplated by law." Tedards v. Auty, 232 N.J. Super. 541, 549 (App. Div. 1989) (quoting Ash v. Cohn, 119 N.J.L. 54, 58 (E. & A. 1937)). "[B]asic to the tort of malicious abuse of process is the requirement that the defendant perform 'further acts' after issuance of process 'which represent the perversion or abuse of the legitimate purposes of that process.'" Baglini v. Lauletta, 338 N.J. Super. 282, 294 (App. Div. 2001) (quoting Penwag Prop. Co., Inc. v. Landau, 148 N.J. Super. 493, 499 (App. Div. 1977)). "In the absence of some coercive or illegitimate use of the judicial process there can be no claim for its abuse." Ibid. "The tort of malicious abuse of process lies not for commencing an improper action, but for misusing or misapplying process after it is issued." Hoffman, 404 N.J. Super. at 431. In a malicious abuse of process claim the court must focus not on what prompted the suit but what action was engaged in after its commencement. Ibid.

Once the municipal court judge found probable cause to issue the criminal harassment complaint and TRO, J.P.Q. took no actions that a reasonable

13                                                                              A-3439-18

factfinder could find to be an abuse of process. The record contains no evidence that J.P.Q. acted in an untoward manner at any point after the municipal court issued the criminal harassment complaint and TRO. A hearing was held on the domestic violence complaint, at which J.P.Q. testified. The criminal complaint ultimately was dismissed, although the reason for the dismissal is not entirely clear from the record. J.P.Q.'s failure to prove her allegations does not amount to an abuse of the judicial process. P.C.'s opinion that J.P.Q. lied and had an improper motive when initiating the two proceedings is insufficient to prevent entry of summary judgment against him.

We need not tarry long on P.C.'s claim of intentional, reckless, or negligent infliction of emotional distress. To sustain such a claim P.C. must establish "intentional and outrageous conduct by the defendant, proximate cause, and distress that is severe." Griffin v. Tops Appliance City, Inc., 337 N.J. Super. 15, 22 (App. Div. 2001) (quoting Buckley v. Trenton Sav. Fund Soc'y, 111 N.J. 355, 366 (1988)). For the intentional act to result in liability, the defendant must intend to do the act and produce emotional distress. Ibid. "Liability will also attach when the defendant acts recklessly in deliberate disregard of a high degree of probability that emotional distress will follow." Ibid. "The conduct must be '[S]o outrageous in character, and so extreme in

degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" Ibid. Additionally, the defendant's actions must be the proximate cause of the plaintiff's emotional distress. Id. at 22-23. Finally, the emotional distress must be so severe that no reasonable man could be expected to endure it. Id. at 23. "[S]evere emotional distress is a severe and disabling emotional or mental condition which may be generally recognized and diagnosed by trained professionals." Juzwiak v. Doe, 415 N.J. Super. 442, 452 (App. Div. 2010) (quoting Turner v. Wong, 363 N.J. Super. 186, 200 (App. Div. 2003)).

The fact that the municipal court judge found probable cause to issue the criminal harassment complaint and TRO based on the testimony of a police officer obviates any finding of outrageous conduct by J.P.Q. P.C. does not deny that he sent several text messages to J.P.Q. after their romantic relationship ended. A police officer reviewed those texts and described them to the municipal court judge. Any reasonable person in J.P.Q.'s position would be justified in reporting to police what she viewed as harassing communications from a man who was awaiting trial for the murder of his former girlfriend. We note, too, that J.P.Q. had no control over the prosecutor's decision to move to revoke P.C.'s bail on the murder charge, the court's decision to increase P.C.'s

15

bail, or P.C.'s inability to raise the funds necessary to secure his pretrial release on the murder charges.

With respect to the January 25, 2019 order, Rule 4:49-2 provides:

> Except as otherwise provided by R. 1:13-1 (clerical errors) a motion for rehearing or reconsideration seeking to alter or amend a judgment or order shall . . . state with specificity the basis on which it is made, including a statement of the matters or controlling decisions which counsel believes the court has overlooked or as to which it has erred, and shall have annexed thereto a copy of the judgment or order sought to be reconsidered and a copy of the court's corresponding written opinion, if any.

"A motion for reconsideration . . . is a matter left to the trial court's sound discretion." Lee v. Brown, 232 N.J. 114, 126 (2018) (quoting Guido v. Duane Morris, LLP, 202 N.J. 79, 87 (2010)); see also Cummings v. Bahr, 295 N.J. Super. 374, 389 (App. Div. 1996). A party may move for reconsideration of a court's decision pursuant to Rule 4:49-2, on the grounds that (1) the court based its decision on "a palpably incorrect or irrational basis," (2) the court either failed to consider or "appreciate the significance of probative, competent evidence," or (3) the moving party is presenting "new or additional information . . . which it could not have provided on the first application." Bahr, 295 N.J. Super. at 384 (quoting D'Atria v. D'Atria, 242 N.J. Super. 392, 401-02 (Ch. Div. 1990)). The moving party must "initially demonstrate that the [c]ourt acted in

16

an arbitrary, capricious, or unreasonable manner, before the [c]ourt should engage in the actual reconsideration process." D'Atria, 242 N.J. Super. at 401.

Our review of the record reveals that P.C.'s motion for reconsideration was largely a recapitulation of the arguments he raised in opposition to J.P.Q.'s motion for summary judgment or were of insufficient significance to warrant reconsideration.

To the extent we have not specifically addressed any of P.C.'s remaining arguments, we conclude they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3439-18