**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5021-16T1

CHARLES KANE,

     Plaintiff-Appellant,

v.

PUBLIC SERVICE ELECTRIC &
GAS and CALVIN LEDFORD,

     Defendants-Respondents.

_____

> Argued September 20, 2018 – Decided January 31, 2019
>
> Before Judges Fuentes, Accurso and Vernoia.
>
> On appeal from Superior Court of New Jersey, Law Division, Essex County, Docket No. L-1292-15.
>
> Robyne D. LaGrotta argued the cause for appellant (LaGrotta Law, LLC, attorneys; Robyne D. LaGrotta, of counsel and on the briefs).
>
> Michael T. Kenny argued the cause for respondents.

PER CURIAM

Plaintiff Charles Kane appeals from two orders, the first entered in November 2015, dismissing his claim for intentional infliction of emotional distress and rejecting application of the continuing violation theory to his retaliation claim under the Conscientious Employee Protection Act (CEPA), N.J.S.A. 34:19-1 to -14, and the second entered in June 2017 granting summary judgment on the CEPA claim. Finding no error in either order, we affirm.[1]

The essential facts are undisputed. Plaintiff was hired by defendant Public Service Electric & Gas in 1987 and remains in its employ as an energy analyst. In March 2011, he reported a problem with transmitting certain data to Pennsylvania Jersey Maryland Interconnection (PJM), which operates the power grid. PSE&G reports energy load data to PJM in the form of a "preliminary load profile" generated each day of the energy and capacity used on an hourly basis two days earlier. A "final load profile" providing a more accurate assessment is generated on a monthly basis. Reconciliation of any differences between the preliminary and final profiles is reported monthly to establish final settlements

---

[1] As part of the 2015 order, the trial court also dismissed plaintiff's claims for trade libel, tortious interference and negligent infliction of emotional distress. Plaintiff has not briefed those claims on appeal. We accordingly deem them abandoned. See Bacon v. N.J. State Dep't of Educ., 443 N.J. Super. 24, 38 (App. Div. 2015); see also Pressler & Verniero, Current N.J. Court Rules, cmt. 5 on R. 2:6-2 (2019) ("It is, of course, clear that an issue not briefed is deemed waived.").

between PJM and the third-party suppliers responsible for procuring the energy required. Following an upgrade to PSE&G's website, plaintiff learned that although the final profile data was updating correctly on PSE&G's public site, its retail office system was not receiving those updates.

Plaintiff reported the problem to his supervisor, defendant Calvin Ledford, who directed plaintiff to have the vendor look into it. Two months later, in May 2011, the vendor reported it had diagnosed the problem and advised it would require approximately ten hours to fix. Plaintiff reported the news to Ledford, who, after conferring with his supervisor, put it on a list to be addressed when time and resources permitted. The problem was finally corrected in March 2012.

In the meantime, however, plaintiff received a mid-year performance appraisal from Ledford on August 18, 2011, rating plaintiff as "partially meet[ing] expectations," which plaintiff characterized as his "first bad appraisal in twenty-three years." Plaintiff claimed he immediately felt dizzy and experienced chest pains. He left work early that day and commenced a six-month paid medical leave "for hospitalization and treatment for mental health problems."

When he returned to work in March 2012, plaintiff elected to appeal his 2011 mid-year appraisal. Following a meeting with human resources in

3

September 2012 about his appeal, plaintiff sent Ledford an email saying he needed a co-worker to finish certain work for him because he had just "met with HR and am shaking like a leaf." Plaintiff wrote he had "taken two different pills but am feeling worse" to which Ledford replied, "go home and contact your doctor immediately! Don't worry about the work." Although plaintiff testified at deposition he was confused and dizzy and "could not find the letters on the keyboard," he refused Ledford's offer to call him an ambulance. Ledford finally had security escort plaintiff to his car. Plaintiff again went out on paid medical leave for four months.

When he returned to work in March 2013, plaintiff pursued his appeal of his 2011 mid-year performance appraisal "for therapeutic reasons." Plaintiff told the appeal panel he was obsessed with thoughts of his appraisal, being escorted out of the building and ethical issues he thought were being ignored by PSE&G. He advised the panel that he and his psychiatrist hoped a change to his rating would let him move on with his life. Plaintiff argued the mistakes he made, if any, were minor, compared with the profile problem managed by Ledford. The appeal panel declined to change the "partially meets expectations" rating and found no error in Ledford's decision to have security escort plaintiff

4

out of the building in 2012.  The panel did determine plaintiff would receive his $1900 bonus for 2011.

Refusing to accept the panel's decision, plaintiff sent a certified letter, written with the assistance of a lawyer, to PSE&G's ethics counsel in October 2013 rehashing his complaints.  Following a meeting with ethics counsel on the same topics ten months later in August 2014, plaintiff sent counsel an email on September 2 requesting a meeting with the president and the CEO of PSE&G. Plaintiff related he had been unable to sleep the night before "despite tak[ing] several sleeping pills and tranquilizers."  He wrote he had "stated and written numerous occasions my efforts to change my midyear 2011 appraisal had numerous purposes, especially therapeutic with hopes and anticipation of resolving obsessive compulsive thoughts and other mental illnesses and trying to move on with my life without [further psychiatric] treatment."

Plaintiff stated the "email is just another example of obsessive thinking 'put to paper.'"  He wrote "[t]hese thoughts are often continuous on a daily basis" and that he could "spend hours talking non-stop" about them, which he believed the president of PSE&G "would like to hear."  He closed the email noting he had "just seen [his] boss 5 minutes ago.  It is late at night and nobody else

around. I hope to be in my car in 10 minutes and go home to prepare for our meeting," which he "would try to be available [for] anytime, 24 hours a day."

Ethics counsel immediately forwarded the email to human resources, which referred the matter the next day to Dr. Binetti, PSE&G's behavioral health manager. After meeting with plaintiff on September 3, Binetti noted that plaintiff was suffering from ongoing psychological problems and ordered him out of work. Binetti required plaintiff to produce a note from his treatment provider that his psychiatric condition was in remission and he was capable of performing at work before he would be allowed to return. Plaintiff's psychologist agreed plaintiff should not be at work and he again went out on medical leave, returning fourteen months later in November 2015. Plaintiff filed this suit in February 2015 during that leave.

The trial court granted defendants' motion to dismiss plaintiff's complaint for intentional infliction of emotional distress, finding the only act occurring within the two-year tort limitations period was Dr. Binetti placing plaintiff on medical leave in September 2014, a decision with which plaintiff's own psychologist concurred and thus one clearly not actionable. The court further found that even considering plaintiff's negative performance appraisal in 2011 and being escorted out of the building in 2012, those acts, considered singly or

6

in combination, were simply not so outrageous and extreme that no reasonable human being could be expected to endure them. See Buckley v. Trenton Saving Fund Soc'y, 111 N.J. 355, 368 (1988).

The court also limited plaintiff's CEPA claim to events occurring during the one-year statutory limitations period, rejecting plaintiff's continuing violation theory. The court ruled the two events plaintiff claimed were part of a continuing tort, his 2011 performance appraisal and his 2012 escort from the building, were both clearly discrete acts, for which a cause of action accrued on the day they occurred. See Shepherd v. Hunterdon Developmental Ctr., 174 N.J. 1, 21 (2002). The court ruled those two claims were thus time-barred. The court permitted plaintiff to proceed on his CEPA claim for acts occurring within the one-year period preceding his complaint.

Following discovery, a different judge granted summary judgment to defendants on plaintiff's CEPA claim, finding plaintiff failed to establish the first prong of his prima facie case under N.J.S.A. 34:19-3(a), namely that he reasonably believed that PSE&G's conduct in not reporting the final load profiles to PJM violated either a "law, or a rule or regulation promulgated

7

pursuant to law."[2]  N.J.S.A. 34:19-3(a)(1); see Kolb v. Burns, 320 N.J. Super. 467, 476 (App. Div. 1999).  Plaintiff's counsel conceded at argument that she could not identify a specific law or regulation PSE&G violated, and that in the course of discovery defendants produced manuals making clear "there is no obligation for them to do certain things."  She argued, however, that at the time plaintiff "reported it to the company, he believed it was illegal" and that "public policy should stand for proper recording."

The court noted plaintiff alleged in his complaint that PSE&G's failure to use final load profiles in its retail office system "means billing could be incorrect for every hour of every day for every supplier of electricity to customers residing in the PSE&G territory."  When questioned at his deposition, however, plaintiff explained he did not "get involved with PJM . . . and how they charge the electrical suppliers and how they credit electrical suppliers," and that he had "no idea what the financial implications are . . . by choosing not to use the final profiles."  Because the judge concluded plaintiff could not establish the first

---

[2]  We note the Supreme Court has recently granted certification to consider whether a plaintiff in a CEPA action was "required, as part of his prima facie case, to identify a specific law, regulation, or other authority that he reasonably believed had been violated."  See Chiofalo v. State, No. A-2349-16 (App. Div. June 21, 2018) (slip op.), certif. granted, __ N.J. __ (Dec. 17, 2018).

prong of his prima facie case, she did not address plaintiff's proofs on the remaining elements.

Plaintiff appeals, arguing the trial court erred in dismissing his claim for intentional infliction of emotional distress, in ruling there was no continuous tort connecting the adverse employment actions taken against him and in dismissing his CEPA claim. We reject those arguments as without merit.

First, we agree with the trial court that whether one considers the two acts plaintiff now identifies as falling within the two-year limitations period for an intentional infliction of emotional distress claim, PSE&G's 2013 refusal to alter plaintiff's 2011 performance appraisal and Dr. Binetti placing plaintiff on medical leave in 2014, or the two additional acts falling outside the statute, the 2011 appraisal and plaintiff being escorted out of the building in 2012, they do not, singularly or in combination, meet Buckley's test of being "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Buckley, 111 N.J. at 366 (citation omitted).

As we have noted elsewhere, "[e]xcept for the kind of aggravated discriminatory conduct involved in Taylor [v. Metzger, 152 N.J. 490 (1998)], 'it is extremely rare to find conduct in the employment context that will rise to

the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress.'" Griffin v. Tops Appliance City, Inc., 337 N.J. Super. 15, 23-24 (App. Div. 2001) (quoting Cox v. Keystone Carbon Co., 861 F.2d 390, 395 (3d Cir. 1988)). "By circumscribing the cause of action with an elevated threshold for liability and damages, courts have authorized legitimate claims while eliminating those that should not be compensable." Id. at 23 (quoting Buckley, 111 N.J. at 367). Appropriately applying that elevated threshold here, the trial court correctly determined plaintiff failed to adduce sufficient evidence to sustain an intentional infliction of emotional distress claim.

Second, we also agree plaintiff's 2015 CEPA complaint was properly dismissed on summary judgment, and the continuing violation theory could not be invoked to revive plaintiff's stale claims regarding his 2011 performance appraisal, his 2012 escort out of the building and PSE&G's 2013 refusal to alter or rescind the 2011 appraisal.

In order to succeed on a CEPA claim, an employee must demonstrate:

> (1) he or she reasonably believed that his or her employer's conduct was violating either a law, rule, or regulation promulgated pursuant to law, or a clear mandate of public policy; (2) he or she performed a "whistle-blowing" activity described in N.J.S.A. 34:19-3[]; (3) an adverse employment action was taken

against him or her; and (4) a causal connection exists between the whistle-blowing activity and the adverse employment action.

[Dzwonar v. McDevitt, 177 N.J. 451, 462 (2003).]

Our Supreme Court has characterized a CEPA plaintiff's obligation to identify a law, rule, regulation, or clear mandate of public policy "that bears a substantial nexus to his or her claim" as "a pivotal component of a CEPA claim." Hitesman v. Bridgeway, Inc., 218 N.J. 8, 32 (2014). "[T]he plaintiff must identify the authority that provides a standard against which the conduct of the defendant may be measured." Id. at 33. The Court has directed that a "trial court can and should enter judgment for a defendant when no such law or policy is forthcoming." Dzwonar, 177 N.J. at 463; see also Pierce v. Ortho Pharm. Corp., 84 N.J. 58, 73 (1980) ("If an employee does not point to a clear expression of public policy, the court can grant a motion to dismiss or for summary judgment."). As plaintiff conceded he knew of no law or any mandate of public policy, other than "proper recording" he contends PSE&G violated by its failure to transmit final load profiles to PJM, we agree his CEPA claim foundered on the first prong.

We also conclude plaintiff could not establish the third prong, that he suffered an adverse employment action within the statute's one-year limitations

period.  See N.J.S.A. 34:19-5.  CEPA prohibits an employer from taking "retaliatory action against an employee" because of whistle-blowing activity. N.J.S.A. 34:19-3.  The statute defines "retaliatory action" as "the discharge, suspension or demotion of an employee, or other adverse employment action taken against an employee in the terms and conditions of employment."  N.J.S.A. 34:19-2(e).  "Adverse employment action" is defined broadly in light of the remedial purposes of the statute and may include such things as "making false accusations of misconduct, giving negative performance reviews, issuing an unwarranted suspension, and requiring pretextual mental-health evaluations." Donelson v. DuPont Chambers Works, 206 N.J. 243, 257-58 (2011).

Further, an adverse employment action need not take the form of a "single discrete act," but can be "many separate but relatively minor instances of behavior directed against an employee that may not be actionable individually but that combine to make up a pattern of retaliatory conduct."  Green v. Jersey City Bd. of Educ., 177 N.J. 434, 448 (2003).  Our Court has adopted the United States Supreme Court's formulation of "a continuing violation as 'a series of separate acts that collectively constitute one unlawful employment practice.'" Roa v. Roa, 200 N.J. 555, 567 (2010) (quoting Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 117 (2002)).

Critically, however, "the continuing violation theory cannot be applied to sweep in an otherwise time-barred discrete act." Id. at 569. As Justice Long explained in Roa:

> [T]he continuing violation theory was developed to allow for the aggregation of acts, each of which, in itself, might not have alerted the employee of the existence of a claim, but which together show a pattern of discrimination. In those circumstances, the last act is said to sweep in otherwise untimely prior non-discrete acts.
>
> What the doctrine does not permit is the aggregation of discrete discriminatory acts for the purpose of reviving an untimely act of discrimination that the victim knew or should have known was actionable.
>
> [Ibid.]

The application of those principles here means that plaintiff's CEPA claim alleging retaliation based on his 2011 performance appraisal is time-barred, whether or not the continuous violation theory is applied. There can be no doubt on this record but that plaintiff believed as soon as he received his mid-year appraisal in August 2011 that he was the victim of retaliation by defendants. Accordingly, he had to file suit on that claim by August 2012, or not at all.

Moreover, because plaintiff did not file his complaint until February 2015, the only alleged retaliatory act he identifies occurring within the limitations

13

period is Dr. Binetti placing plaintiff on medical leave in 2014. Plaintiff's own doctors, however, agreed he was not fit to work at that time and should be on medical leave. Accordingly, we do not see how PSE&G placing plaintiff on medical leave could possibly qualify as retaliatory under the statute. See Donelson, 206 N.J. at 258 (including only "pretextual mental-health evaluations" among adverse employment actions constituting reprisal); cf. Beasley v. Passaic Cty., 377 N.J. Super. 585, 607 (App. Div. 2005) (noting that where "the affected party does not deny committing an infraction that resulted in discipline, the discipline cannot be considered 'proscribed reprisal'"); see also Breaux v. City of Garland, 205 F.3d 150, 158 (5th Cir. 2000) (requiring a plaintiff to undergo a psychological evaluation does not, on its own, constitute an adverse employment action). Even assuming plaintiff's claim consists of a series of discriminatory non-discrete acts, which we do not, because he cannot show that "at least one of those acts occurred within the statutory limitations period," Shepherd, 174 N.J. at 7, the continuing violation theory is not available to render any aspect of his CEPA claim timely. Accordingly, the claim was appropriately dismissed on summary judgment for that reason as well.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION